Submitted April 2, vacated and remanded May 19, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GARY DANIEL SHAW,
*Defendant-Appellant.*

Lane County Circuit Court
19CR23141; A172537

489 P3d 147

Defendant appeals a judgment of conviction for possession of methamphetamine and felon in possession of a firearm based on methamphetamine and guns discovered by deputies who initially entered defendant's home with his consent and then saw a methamphetamine pipe on the coffee table in front of him. Defendant revoked his consent after the deputies asked about the pipe, but they arrested him for possession of methamphetamine, observed baggies of methamphetamine, and found firearms that defendant was not allowed to possess. On appeal, defendant argues that the trial court erred in denying his motion to suppress evidence of the methamphetamine baggies and guns, because the deputies lacked probable cause to arrest him based on their observation of the pipe and had no right to be in his home once he revoked his consent to their entry. *Held*: In light of *State v. Sunderman*, 304 Or App 329, 467 P3d 52 (2020), decided after the court's ruling in this case, the court erred in concluding that the methamphetamine pipe, by its nature, created probable cause to arrest for possession of methamphetamine. The trial court did not have the benefit of *Sunderman* and did not address an underlying factual dispute as to whether one of the deputies initially saw residue in the pipe or only later discovered it upon further inspection after defendant's arrest, so the proper disposition was a remand for the trial court to engage in the necessary factfinding and reconsider its ruling.

Vacated and remanded.

Karrie K. McIntyre, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Nora Coon, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Vacated and remanded.

**JAMES, J.**

Defendant appeals a judgment of conviction for possession of methamphetamine, ORS 475.894, and felon in possession of a firearm, ORS 166.270. The charges were based on methamphetamine and guns discovered by deputies who initially entered defendant's home with his consent and then saw a methamphetamine pipe on the coffee table in front of him. Defendant revoked his consent after the deputies asked about the pipe, but they arrested him for possession of methamphetamine, observed baggies of methamphetamine, and found firearms that defendant was not allowed to possess.

On appeal, defendant argues that the trial court erred in denying his motion to suppress evidence of the methamphetamine baggies and guns, because the deputies lacked probable cause to arrest him based on their observation of the pipe and had no right to be in his home once he revoked his consent to their entry. At the suppression hearing, there were factual disputes as to what the deputies saw and when, including whether (and in what amount) one of the deputies, Smith, saw methamphetamine residue in the pipe before arresting defendant. Smith had responded affirmatively on direct examination when asked, "When you first observed it, did you observe residue in the pipe?" He had also testified that "when I first looked at the pipe you can see that it's burnt, and that the residue goes down the shaft of the pipe, and then tapers off to white. That indicates to me that there's quite a bit of residue buildup because of the way that it recrystallizes when it goes from smoke form and is being inhaled."

Defense counsel, however, pointed to other testimony about the sequence of events and the layout of the room to argue that the officers, including Smith, had not closely inspected the pipe until after they had already arrested defendant. He further argued that the evidence at the hearing reflected that the deputies were "five to ten feet away from the pipe at night"—facts that could undermine Smith's testimony that he was able to see residue in the pipe before defendant had revoked his consent.

The trial court did not resolve the parties' factual dispute over whether Smith had observed residue in the pipe before defendant had revoked his consent and was arrested. Rather, the court ruled that Smith "immediately identified a meth pipe, which he knows from his training and experience to be a meth pipe that is unique, specific and specially designed exclusively for ingesting methamphetamine," and that the incriminating nature of *the pipe itself* provided probable cause for the arrest.

The state concedes that, in light of *State v. Sunderman*, 304 Or App 329, 467 P3d 52 (2020), which was decided after the trial court ruled in this case, the trial court's rationale was erroneous, and that a methamphetamine pipe alone does not create probable cause to arrest for possession of methamphetamine. We agree with and accept that concession. In *Sunderman*, we held that a defendant's possession of unused methamphetamine pipes was insufficient, by itself, to support probable cause for possession of methamphetamine. *Id*. at 344. And, in reaching that conclusion, we rejected the state's argument that it could bridge the gap between an unused pipe and possession with an officer's testimony that people who possess methamphetamine pipes are likely to also possess methamphetamine. That testimony, we explained, "is not particularized to defendant or her car and does not—by itself—constitute a specific and articulable fact on which probable cause can be based." *Id*. at 347.

Here, in the absence of a factual finding that Smith actually saw residue in the pipes before arresting defendant, the circumstances are materially indistinguishable from *Sunderman*. Smith testified at length about his training and experience regarding methamphetamine pipes and residue, including how methamphetamine settles to the bottom of the bowl, forming "oftentimes a fairly thick layer of methamphetamine that you can obtain and test, and it's actually something that most methamphetamine users will scrape out and smoke at a later date when they're hard up for fresh meth." He further testified that "there is usable quantities—sometimes a gram or two of methamphetamine that's recrystallized inside the pipe. It's testable, it's weighable, it's usable; sometimes more than one use worth of

methamphetamine in the pipe." And he testified that "*this clearly had a significant amount of burned residue inside. So it was more likely than not at that point that this was a methamphetamine pipe.* In fact, no doubt in my mind that it was methamphetamine pipe, and that there was going to be [a] chargeable amount inside that pipe." (Emphasis added.)

Although Smith's training and experience bears on what he could expect to find in a used methamphetamine pipe containing residue, it cannot supply the predicate fact of use, and the trial court did not make a finding on that predicate fact. Therefore, as was the case in *Sunderman*, Smith's training and experience with methamphetamine pipes and residue cannot bridge the gap to probable cause for possession of methamphetamine. *Id.* at 348 ("[W]e reject the state's argument that the 'something more' required for probable cause may be met by simply combining [the officer's] training and experience with his observation of the unused methamphetamine pipes.").

The remaining question is the appropriate disposition. The state argues that we should remand the case to the trial court to resolve the factual dispute over whether Smith saw methamphetamine residue before defendant revoked his consent and was arrested. We agree. The trial court decided this case without the benefit of *Sunderman* and did not address the parties' dispute over whether Smith initially saw the residue in the pipe or only later discovered it upon further inspection after defendant's arrest. We therefore remand for the trial court to engage in the necessary fact-finding and to reconsider its ruling in light of *Sunderman*. *See, e.g.*, *State v. Kamph*, 297 Or App 687, 698, 442 P3d 1129 (2019) (vacating and remanding for the trial court to address the applicable standard and "for any additional factfinding that may be necessary").[1]

Vacated and remanded.

---

[1] We note that, since the judgment was entered against defendant, ORS 475.894 has been amended by voter initiative (Ballot Measure 110, § 17 (2020)).